[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a legal action seeking foreclosure of the plaintiff, Leonard Napoli's, first mortgage on premises located at 395-401 Bridgeport Avenue, Milford, owned by the defendant, Susan Forte, who signed the $300,000 mortgage note which was guaranteed by her former husband, Frank Forte. A professional corporation, Forte Chiropractic Group, leased a part of the premises.
Both the note and deed contained covenants requiring the defendants to promptly pay all taxes and duties assessed against the property. The note states that the "Maker agrees to pay all taxes or duties assessed upon sum against Holder or other owner of this Note, the debt evidenced hereby, or the mortgage securing the same, other than Holder's income or franchise taxes, and upon the property by mortgage of which the same is secured . . ." (Ex.9). The deed requires that the grantor "pay promptly, before the same shall become delinquent, all taxes, charges, and assessments of any kind that may be laid upon said premises, or upon this mortgage or the note or notes or debts secured hereby." (Ex. 10). The mortgage note also contains an acceleration clause allowing the holder to demand the entire principal and accrued interest to become due and payable without notice upon the occurrence of one of three conditions. The first of such conditions allows the holder to accelerate upon any "Default in the payment of any installment of principal or interest due hereunder or of taxes or municipal assessment on the premises mortgaged to secure this Note or of fire or other insurance premiums or of taxes on this CT Page 7041 Note for a period of thirty (30) days after any of the same become due and payable, or failure to keep and perform any of the agreements or provisions contained in the mortgage securing this Note." (Ex.9.) A footnote to that provision explains the "thirty days after" language as being contingent on "written notice by certified mail, return receipt requested of."
On January 11, 1999, Susan Forte was defaulted for failure to disclose a defense, (Motion #167). Later, in the course of trial, this was reopened and she was permitted to file a defense.
The defendant, Susan Forte, cross complained against the two remaining defendants, Frank Forte and the Chiropractic Association, L.L.C.
Testimony the court finds credible from appraiser Neil Kaye, establishes the valuation at $250,000, allocated $90,000 to the land and $160,000 to improvements. This premise consists of a first floor chiropractic office. The second floor contains an area able to be used for at least one apartment and possibly another with some renovations.
The court finds that as of January 11, 1999 the mortgage debts was as follows:
Principal: $277,279.54
 Interest at 11% from 1/26/98 to 1/11/99 . . . . 29,329.56
 Less interest paid through the Receiver . . . . -17,542.00 --------- 11,787.56 . . $ 11,787.56
 TOTAL DEBT as of January 11, 1999 $289,067.10
Because a receiver was previously appointed to receive interest, the court will take additional evidence on August 9, 1999 to determine what additional interest may have run.
Issues in this case were bifurcated as to attorney's fees and all parties stipulated that the court should first decide whether the plaintiff was entitled to a foreclosure judgment and, if so, CT Page 7042 determine the attorney's fee issue after taking further evidence.
In November, 1997, the defendants defaulted on the note and the plaintiff initiated acceleration. At that time, the defendants managed to decelerate the note by making payments current and covering fees associated with the startup of foreclosure. Upon the deliverance of the $24,000 needed to decelerate the mortgage, the plaintiff signed a forbearance agreement in which he agreed not to initiate another foreclosure action solely on the basis of delinquent taxes. (Exs. 11, H.) In consideration of this forbearance, the defendants promised to pay delinquent tax assessments in the amount of $2,000 a month, with the receipt of such payment to be received by the plaintiff. The plaintiff reserved the right to initiate foreclosure proceedings if the defendants failed to monthly pay the delinquent taxes or failed to provide receipt or, additionally, if the City of Milford commenced tax foreclosure or the defendants defaulted under the terms of the note and mortgage. (Exs. 11, H.)
The defendants point out that the plaintiff should be bound by his forbearance agreement because the agreed consideration was paid but that they neither signed nor agreed to the provisions of the agreement regarding receipts. The court agrees but finds that the defendants Frank and Susan Forte did not pay the $2,000.00 per month taxes, so that the plaintiff was entitled to rely on provisions of the note and deed requiring the borrower to pay taxes when due and was not required to continue forbearance where the monthly $2,000.00 payment on back taxes had not been made and taxes were substantially in arrears on three grand lists.
In April, 1998, the plaintiff initiated a second foreclosure action against the defendants.[1] An April 1, 1998 letter from the plaintiff to the defendants stated that the defendants were in default for failing to make monthly mortgage payments in the amount of $2,940.36 for both the months of February and March, failing to pay a late charge on the monthly payments, failing to pay all real estate taxes before they have become delinquent and failing to present a receipt for a monthly $2,000 payment against the delinquent real estate taxes. (Ex. 20.) The defendants have raised several defenses to this acceleration and ensuing foreclosure action.
"Forbearance from suit is, of course, valid consideration for a contract if the claim on which the suit was threatened was valid and enforceable. . . . Moreover, it is a general rule of CT Page 7043 law that forbearance to prosecute a cause of action, where the right is honestly asserted under the belief that it is substantial, although it may in fact be wholly unfounded, is a valuable consideration which will support a promise." (Citations omitted; internal quotation marks omitted.) Iseli Co. v.Connecticut Light Power Co., 211 Conn. 133, 136, 558 A.2d 966
(1989).
In the present case, the mortgage note and deed state that the plaintiff could accelerate on the note if the defendants fail to maintain and pay the appropriate tax assessments. Thus, the plaintiff's forbearance from a foreclosure suit on delinquent taxes alone is adequate consideration in return for the defendants' promise to pay back taxes at the rate of $2,000 a month and to provide the plaintiff with receipt of such payment.
The evidence indicates that the defendants have not continuously made the required $2,000 monthly payments.[2]
Since the plaintiff conditioned his forbearance on the understanding that the defendants would make the monthly payment, the present foreclosure action is not violative of the previously signed forbearance agreement. Furthermore, the plaintiff reserved the right to initiate acceleration in the event that the defendants defaulted on any other provision in the note or mortgage. The defendants' failure to pay the monthly payments and accumulated late charges allow the plaintiff to exercise his reserved rights.
Having found that the forbearance agreement does not bar the plaintiff's acceleration on the note, the question before the court is whether the acceleration was properly made. Specifically, the defendants argue that the acceleration was improper because 1) the plaintiff improperly accelerated during a ten day grace period and 2) the plaintiff's notice of default was insufficient. The defendants also offered evidence concerning whether the notice properly complied with the requirements of the mortgage instruments which provided for the notice to be in writing and sent by certified mail, return receipt requested. Upon all the credible evidence, the court finds this was done.
The court will therefore first consider the claim of improper acceleration during a grace period.
On March 2, 1998, the plaintiff sent the defendants a letter stating that the defendants were in default for failure to make a CT Page 7044 mortgage payment due February 25, 1998. (Exs 12, 21.) Likewise, the plaintiff stated that the defendants were also in default on the mortgage payment due for January, 1999, and the late charge that had accumulated since then. In addition, the plaintiff informed the defendants that they had failed to pay real estate taxes before they became delinquent and had also failed to provide receipts to the plaintiff for any monthly tax payment that the defendants were obliged to make. (Exs. 12, 21.)
The defendants argue that, because there was a ten day grace period which began to run on the 25th of February, the March 2, 1999 letter was premature as to any default. This argument ignores the fact that back taxes were due which the note required to be paid and that the January mortgage payment was due. The defendants argue that, since on March 2, 1999, the defendants had an additional five days to cure any default, they were never properly notified of the actual default as was the plaintiff's obligation under the acceleration clause of the note.
The defendants' argument is based on language in the mortgage note which states that "in the event any payment due under the terms of this Note is received by the Holder hereof more than ten (10) days after the due date, said payment shall be subject to a charge of five (5%) of the amount of said late payment." According to the defendants, the plaintiff's previous conduct shows that no default occurred until after the ten days had expired. (See Frank Forte's Post Trial Memorandum, February 5, 1999, "p. 3".) The plaintiff, however, argues that the language relied on by the defendants merely provides a late charge that does not impose a grace period by its own terms.
Several decisions of courts from other jurisdictions have discussed provisions similar to the one in the mortgage note. SeeNorthwest Bergen v. Midland Park, 604 A.2d 229 (1992); Auto-Plaza,Inc. v. Central Bank of Alabama, 394 So.2d 6 (1981). In these cases, the courts, looking at the language of the contract, stated that since payment is clearly due on a set date, the disputed provision merely provides that an additional charge be assessed if payment does not occur with a set number of days. The default is controlled by the date that payment is due and not by the expiration of a set number of days which may trigger an applicable late charge.
The Midland Park case, in particular, differentiated between "grace period" language and "late payment" language. Thus, a CT Page 7045 contract that contained a provision stating that "if at any time default should be made in the payment of interest for the space of thirty days after the semi-annual payment shall fall due, then the whole principal sum with all unpaid interest should, at the option of the mortgagee or its successors or assigns, become immediately due," was a grace period where the mortgagor is "not in default unless payment is not made by the end of the grace period and the creditor may not accelerate the loan or foreclose on the property until the end of that time." Northwest Bergen v.Midland Park, supra, 604 A.2d 237. A contract that stated, in part, that "if any part of such installment or payment due . . . shall remain unpaid for thirty days following its due date, the municipality shall be charged interest from the due date," did not provide for a grace period. Id.
In the present case, the disputed language of the note that "[i]n the event any payment due under the terms of this Note is received. . . more than ten (10) days after its due date, said payment shall be subject to a charge of five (5%) of the amount of said late payment" is more similar to a late payment rather than a grace period. As with the contracts discussed in the cases above, the due date is expressly stated in the contract and the disputed provision only applies to payments that are deemed late. While the late payment clause may provide a "grace period" in the sense that additional charges are not added to the debt due until the passage of ten days, that particular clause does not provide a grace period from the default itself. That is, the due date and the late payment date are two totally separate provisions, independent of one another.
The evidence at trial shows that the plaintiff's past actions are consistent with such an interpretation. Specifically, the plaintiff constantly treats the default date and the late payment date as two separate occurrences. The plaintiff's correspondence with the defendants states that if the payment is more than ten days late, an additional charge is added to the already existing debt. (See, e.g., ex. I.) On certain occasions, the plaintiff would notify the defendants of a default prior to the expiration of the ten day period and inform the defendants that a late charge would be due in addition to the unpaid debt if it was untimely received. (Ex. K.) Contrary to the assertions of the defendants, the plaintiff's notification of a late charge ten days after the default date does not constitute a grace period to the default, but rather is worded according to the provisions of the deed and indicative of a late charge. CT Page 7046
Furthermore, treating the late payment period as an absolute grace period would be superfluous when considering the mortgage note as a whole. Even without the late payment clause, the mortgage note provides for a thirty day period in which the defendants can cure any default after receiving written notice of such default. In light of this provision, it would be duplicative to have yet another grace period, especially one of a shorter duration that expires during the course of the longer grace period. Similarly, in light of language in the note that specifically provides that the thirty day period begins to run after written notice, it is implausible that the thirty day period might begin to run only after the end of the ten day period. Treating the "late-payment" language as an additional fee rather than a grace period eliminates such a bizarre result. Under the latter interpretation, the defendant borrower absolutely has a thirty day grace period to cure the default, and merely is required to pay an additional charge if he does so after ten days from default.
According to the note, the thirty day period begins to run after the mortgage payment becomes due, and the holder notifies the maker of default. The second principal question raised by the defendants, however, is whether the notice must properly state that the defendant does have thirty days in which to cure a default.
"Notices of default and acceleration are controlled by the mortgage documents. Construction of a mortgage deed `is governed by the same rules of interpretation that apply to written instruments or contracts generally, and to deeds particularly. The primary rule of construction is to ascertain the intention of the parties. This is done not only from the face of the instrument, but also from the situation of the parties and the nature and object of their transactions.' 55 Am.Jur.2d § 175 (1971)." Citicorp Mortgage, Inc. v. Porto, 41 Conn. App. 598,602, 677 A.2d 10 (1996).
In the present case, there is confusion concerning requirements in the note as to the sufficiency of notice and acceleration provided by the plaintiff, particularly in the March 2, 1998 letter to the defendants. (Exs. 12, 21.) While the majority of mortgage notes discussed by the superior courts contain requirements that must be stated in the notice of default,[3] the present note is silent as to any such CT Page 7047 requirements. On its face then, the language of the note suggests that any notice of default is sufficient and, therefore, the disputed March 2, 1998 letter satisfies any and all requirements.
The defendants have testified, however, that they relied on the fact that the plaintiff's notices of default did contain language relating to the ability to cure within thirty days. The defendants further argue that, without the inclusion of such language in the notice they were unable to understand the imminent nature of acceleration contemplated in the supposed default notices, and thus failed to cure the default even though they would have been able to otherwise. As such, the defendants claim that the plaintiff should be estopped from accelerating because the March 2, 1998 letter lacked the specific thirty day language.
Equitable estoppel is the "effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse. . . ." (Citations omitted.) Rapin v.Nettleton, 50 Conn. App. 640, 649, 718 A.2d 509 (1998). "It is the burden of the person claiming the estoppel to show that he exercised due diligence to: ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." O'Sullivan v.Bergenty, 214 Conn. 641, 650, 573 A.2d 729 (1990). Due diligence may be proved by direct evidence or through properly drawn inferences. Id., 650-51.
The defendants, arguably, meet the first element of estoppel. Previous notices of default in evidence show that, until February 1998, the plaintiff would constantly include language as to the ability to cure within thirty days in the notices of default to the defendants. (See Exs. 16, 17, I, J, K.) No such notice of thirty days was included in the latest communications between the plaintiffs and the defendants from February 1998 until the initiation of the second foreclosure action. (See Exs. 18, 20, 21.) Thus, the plaintiff has changed his conduct and manner of communicating with the defendants. The thirty-day language, however, was included in the default notices leading up to the first foreclosure and, apparently, was expected by the defendants to be in all future notices as well. The defendants, therefore, could have relied on the inclusion of the thirty-day language in CT Page 7048 the previous notices to their detriment in failing to recognize notices not containing the thirty-day language.
The defendants, however, must also show that they exercised due diligence in ascertaining the truth, and that the defendants not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. According to the post-trial memorandum of law submitted by the defendant Frank Forte, the plaintiff did nothing to dissuade the defendant of the understanding the defendant possessed as to language that would be contained in the notice required by the mortgage note. (See, Frank Forte's Post-Trial Memorandum of Law, "p. 10)"; Ex. 13.) Forte argues that, to make an argument, he has met the "due diligence" requirement of equitable estoppel as a result of the plaintiff's failure to clarify a misunderstanding held by Forte.
Such an argument, if construed correctly from the defendants' briefs, is not persuasive. For one, the letter (Ex. 13) referred to by the defendant Frank Forte does not appear to stand for the proposition that the defendant had any sort of conception — right or wrong — of the language to be contained in a default notice. The letter by itself hardly invites a response on the part of the plaintiff to clarify any misperceptions that the defendant may have had. In that respect, contrary to the assertions of the defendants, the letter is not obviously a gauge into the understandings and expectations of the defendants. In such a circumstance, the long-standing principle that "silence will not operate as an estoppel absent a duty to speak"; Boyce v.Allstate Ins. Co., 236 Conn. 375, 387, 673 A.2d 77 (1996); seems quite appropriate. Additionally, upon receipt of the March 2, 1998 letter, which for only the second time did not contain language as to the thirty-day period, the defendant could have dispelled any confusion as to the contents of the letter by seeking clarification from the plaintiff as to the meaning of this notice. See S.H.V.C., Inc. v. Roy, 188 Conn. 503, 511,450 A.2d 351 (1982) ("[t]here is no evidence that the defendant attempted to determine whether he might give legal significance to the plaintiff's forbearance"); see also William Raveis RealEstate v. Commissioner of Revenue Services, 43 Conn. App. 744,753, 686 A.2d 519 (1996) ("[t]he plaintiff had a duty to exercise due diligence and to make further inquiry rather than relying on an inference that it drew concerning tax liability"). Apparently the defendants did not choose to do so.
Thus, a question remains whether the defendants equitable CT Page 7049 estoppel argument is valid. While the defendants have shown that they have relied, to their detriment, upon the plaintiff's variance from established conduct pertaining to the default notice, they have not exercised due diligence in seeking out the true intentions of the March 2, 1998 letter.
The defendants raise an additional point as to the deficiency of the March 2, 1998, default notice. Accordingly, the defendants also argue that the March 2 letter is improper because it failed to clearly contain a statement that any possible foreclosure proceedings or litigation may result if payment is not made. As with the thirty days notice clause, the plaintiff's previous default notices did constantly make reference to possible foreclosure or court action. (See Ex., 16, 17, I, J, K.) Again, as with the thirty days notice, the plaintiff stopped including the pertinent foreclosure language in his default notices. (See Ex., 18, 20, 21.)
The short answer to this argument is that it does not appear as though the defendants have met all the elements of estoppel. The plaintiff is not required to give notice of his intention to bring a foreclosure proceeding. As per the mortgage note, the plaintiff's sole obligation is to provide the defendants with notice of default. The institution of a foreclosure action without prior notification of such an intent, is a valid exercise of a mortgagee's acceleration rights. Hartford Federal Savings Loan Assn. v. Tucker, 196 Conn. 172, 180, 491 A.2d 1084, cert. denied, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985) (the defendant received proper notice of the institution of the foreclosure action and could not make an argument that he did not received a notification of the plaintiff's intent to bring foreclosure).
There is no borrower's equity in the premises. A judgment of strict foreclosure, accordingly, is entered in the plaintiff's favor.
The law day is set as the second Monday of September (September 13, 1999) for Susan Forte; September 14, 1999 for Frank Forte; and September 15, 1999 for Forte Chiropractic Group, P.C. If none of the defendants has so redeemed, title shall vest in the plaintiff on September 16, 1999.
The plaintiff's appraiser is allowed a fee of $1,125.00. CT Page 7050
The court does not find the defendant Susan Forte's or Frank Forte's special defense proved that "the plaintiff treated and acknowledged Forte as the maker of the note in question." The note was clearly signed by Susan Forte as maker and by Frank Forte as guarantor.
The court has previously heard evidence relating to the cross claim of Susan Forte against the defendants Frank J. Forte and Forte Chiropractic Associates, L.L.C. The gravamen of this cross complaint is that an oral agreement was reached by all defendants that the defendant professional corporation was to occupy the premises after the defendant Susan Forte took title and was to pay all taxes, utility charges and mortgage payments on the premises, and has not done so, causing Susan Forte damages, future damages and expenses for attorney's fees, both the plaintiff's and her own.
Since the parties stipulated that the question of what attorney's fees may be due to the plaintiff should be deferred until the foreclosure issues had been determined, this cross complaint must be necessarily deferred as well. There are substantial questions about the necessity and amount of plaintiff's attorney's fees which must be determined. The court understands that claim of the plaintiff to exceed $50,000, and evidence must be taken to determine if, under all the circumstances, the plaintiff's attorney's fees claims are excessive, before any defendant can be charged with their payment.
The clerk is ordered to set down this matter for evidentiary hearing on the issues of plaintiff's attorney's fees for August 9, 1999 at 10 a.m. At that time, the court will also hear evidence on the amount of interest which has run from January 11, 1999, if the parties are not able to stipulate to that sum. The court will thereafter decide the defendant Susan Forte's cross claim for damages and recovery of payments for attorney's fees.
Flynn, J.